# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The Body of MICAH ADAM WOODY, YOB 2003 | )<br>)<br>)  Case No.  **24mr1188**<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Crimes committed in Indian Country |
| 18 U.S.C. § 1111 | Murder |

The application is based on these facts:
See attached Affidavit, submitted by SA Lorraine Hardy and approved by AUSA Zach Jones

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lorraine Hardy, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically sworn and electronically signed   *(specify reliable electronic means)*.

Date: 06/21/2024

_____
*Judge's signature*

City and state: Farmington, New Mexico   B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: The Body of MICAH ADAM WOODY, YOB 2003 | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

I, Lorraine Hardy, a special agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

**INTRODUCTION & AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the body of Micah Adam Woody (hereinafter referred to as WOODY), year of birth 2003, for the purpose of obtaining deoxyribonucleic acid (DNA) by collecting oral (buccal) swab samples according to the standard practices and procedures employed by the FBI for DNA testing and comparison. Based on the facts in this Affidavit, there is probable cause to believe WOODY violated federal criminal statutes, including 18 U.S.C. § 1153 (Crimes committed in Indian Country) and 18 U.S.C. § 1111 (Murder). Because there is probable cause to believe WOODY committed this crime, there is also probable cause to believe WOODY's DNA will be found on the evidence collected during this criminal investigation, including a black folding knife and a black baseball cap collected from the crime scene. Therefore, probable cause exists to collect a DNA sample from WOODY via buccal swab to compare it with samples collected from lawfully seized evidence in this case.

2. I currently serve as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian

Country to include homicide, aggravated assault, child sexual assault, kidnapping, and rape. I have been with the FBI for approximately five years. I have received on-the-job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

3. As part of my training and experience, I have had the opportunity to collect and evaluate forensic evidence, like DNA, for evidentiary value. I also have training and experience in the proper collection, packaging, and dissemination of DNA evidence.

4. This Affidavit is based upon information reported to me by other law-enforcement officers during their official duties. Throughout this affidavit, reference will be made to law-enforcement officers. Law-enforcement officers are those federal, state, and local law-enforcement officers who have directly participated in this investigation. This Affidavit is also based upon information gained from interviews with cooperating citizen witnesses, whose reliability is established separately herein.

5. This Affidavit is intended to show there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter. The statements in this Affidavit are based on my personal knowledge, information that I have received from other law-enforcement personnel, and from persons with knowledge regarding relevant facts. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set

forth facts that I believe are sufficient to establish probable cause to obtain the requested warrant.

6.     WOODY is not currently in custody.

## PROBABLE CAUSE

7.     On or about January 24, 2024, the Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal Investigations (NNDCI) of a stabbing that occurred outside a Shiprock residence. An unidentified male (hereinafter referred to as UNSUB) stabbed S.D. (hereinafter referred to as JOHN DOE), YOB 1995, in the neck with a knife and took off running. DOE was transported to Northern Navajo Medical Center where he was pronounced deceased.

8.     FBI and NNDCI responded to the scene and observed an inoperable blue Nissan Sentra parked near two residences. Navajo Police Department (NPD) had secured the scene prior to arrival. NPD advised the family had gone to the hospital with DOE. A large amount of a red substance (resembling blood) was pooled near the front of the Nissan Sentra. NPD previously interviewed witnesses, who stated DOE was sitting in the Nissan Sentra when the UNSUB walked up. DOE exited the Nissan and argued with the UNSUB. The UNSUB stabbed DOE once in the neck and took off running south. Law enforcement searched the immediate area and the UNSUB's direction of travel, but did not locate any items of evidence.

9.     JOHN DOE's sister (hereinafter referred to as S.R.), year of birth 1982, was the registered owner of the Nissan Sentra and provided law enforcement a consent-to-search form for the vehicle. Law enforcement located two cellular phones in the Sentra, one of which was an Android C5L Max that family members said belonged to DOE.

10.     Through an interview DOE's brother (hereinafter referred to as D.D.), year of birth 1992, it was learned D.D. was hanging outside with DOE, his cousin (hereinafter referred to as A.Y.), year of birth 1992, and the cousin's boyfriend (hereinafter referred to as U.S.), year of birth 1994, on the evening of DOE's death. JOHN DOE was sitting inside the Sentra when D.D. walked inside to grab something. As D.D. walked inside, he noticed the UNSUB walk up to DOE. A short time after, D.D. heard yelling outside and ran back outside. D.D. saw the UNSUB running, so D.D. gave chase. D.D. was unaware the UNSUB had just stabbed DOE. D.D. described the UNSUB as six-foot tall, wearing all black with a black baseball cap. D.D. had seen the UNSUB prior to that date, but did not know his name. D.D. observed what appeared to be blood un the UNSUB's hand. As D.D. got close to the UNSUB, the UNSUB yelled "leave me alone" as he ran. The UNSUB started yelling "help me," so D.D. stopped chasing him. D.D. retuned home and discovered DOE had been stabbed.

11.     During an interview with A.Y. and U.S. it was learned they were at DOE's residence that evening celebrating A.Y.'s birthday. After dark, they sat inside the Sentra listening to music. The insides of the car's windows were covered such that they could not see out of the car. The UNSUB walked up and knocked on the window of the car. DOE got out to talk to the UNSUB. A.Y. believed DOE knew the UNSUB because they initially hugged and shook hands. A.Y. opened the car door and saw the UNSUB punch DOE in the face and take off running. A.Y. observed DOE lying on the ground, bleeding and yelling. U.S. and D.D. pursued the UNSUB. A.Y. and U.S. stated they did not know the UNSUB. Both A.Y. and U.S. were hesitant to speak with law enforcement and ended the interview quickly. It was later learned A.Y. and U.S. told NPD that someone who went by "Lorenzo" was the one who stabbed DOE. LORENZO hung out with a guy named "Alvin Yazzie," who lived in a trailer east of their

residence. NPD officers drove to the residence A.Y. and U.S. pointed out; the people residing there did not know YAZZIE or LORENZO.

12.     The day after the incident, JOHN DOE's father (hereinafter referred to as H.D.), year of birth 1960, was interviewed. H.D. was not home during the incident but came home when he heard about it. The next day in the daylight, H.D.'s son (hereinafter referred to as E.D.), year of birth 1989, followed the UNSUB's footprints. Following the footprints, E.D. located a folding knife with a black handle with what appeared to be blood on it behind the shed in the direction the UNSUB ran the night DOE was stabbed. The same morning, E.D.'s daughter and his sister (S.R.) located a black baseball cap like one the UNSBUB was wearing near the bus stop. The bus stop was in the area where the UNSUB ran. E.D. collected the knife and baseball cap with plastic bags without touching the items and instructed H.D. to give them to law enforcement. H.D. was aware DOE's sibling had seen the UNSUB around DOE before, but no one knew his name.

13.     On January 30, 2024, Affiant received a phone call from one of DOE's brothers (hereinafter referred to as S.D.), year of birth 1995, stating D.D. located a Facebook profile picture of who he believed to be the UNSUB. The profile picture depicted a young Native American male wearing a black baseball cap. The person's profile identified him as WOODY. D.D. was 100% positive WOODY was the person who stabbed DOE.

14.     On February 7, 2024, a photo array was shown to D.D. by a Special Agent who had no prior knowledge of the investigation or the suspects involved. After reviewing the photos, D.D. indicated a 100%-positive identification of photo #2. Photo #2 was a New Mexico driver's license photo of WOODY.

15. Doe's stabbing occurred at ¼ mile past NNMC on Rgt. Hwy Rd 491, Shiprock, New Mexico 87420. The GPS coordinates are 36.811799, -108.685531, which is within the exterior boundaries of the Navajo Nation.

16. WOODY and JOHN DOE are enrolled members of the Navajo Nation.

17. In the event WOODY refuses to cooperate with the collection of his DNA sample, Affiant requests authorization from the Court, through the signing of this warrant, to use reasonable force or restraint to the extent necessary to collect the samples.

## CONCLUSION

18. Based on my training, experience, and the facts as set forth in this Affidavit, there is probable cause to believe violations of 18 U.S.C. § 1153 (Crimes committed in Indian Country) and 18 U.S.C. § 1111 (Murder) were committed by WOODY and that evidence of such violations will be found on WOODY's person, in the form of DNA. Said DNA is relevant in the context of forensic analysis for comparison with the black folding knife and a black baseball cap to establish WOODY's participation in this crime.

19. I respectfully request a search warrant be issued to search the person of Micah Adam WOODY, YOB 2003, for the purpose of obtaining DNA to compare with any DNA found on the black folding knife and the black baseball cap collected from the crime scene.

20. Assistant United States Attorney Zach Jones reviewed and approved this Affidavit for legal sufficiency to establish probable cause.

Electronically subscribed and telephonically sworn to me on June_____, 2024

*/s/ Hardy*

_____
Lorraine Hardy
Special Agent
Federal Bureau of Investigation

Approved:

*/s/ B. Paul Briones*

_____
B. Paul Briones
United States Magistrate Judge

_____
Date and time

## ATTACHMENT A
PERSON TO BE SEARCHED

Micah Adam WOODY, year of birth 2003. WOODY currently resides at North Navajo Housing Authority (NHA), House number 191, Shiprock, New Mexico 87420. WOODY is an enrolled tribal member of the Navajo Nation. WOODY is pictured below:



8

## ATTACHMENT B
PROPERTY TO BE SEIZED BY THE GOVERNMENT

The following material, which constitutes evidence of the commission of a criminal offense, namely violations of 18 U.S.C. § 1153 (Crimes committed in Indian Country) and 18 U.S.C. § 1111 (Murder):

1. Affiant will use minimally invasive DNA buccal swabs to collect samples of DNA from WOODY.